### HAROLD E. HEBBARD *vs.* MICHAEL McDONOUGH.

Essex.   March 13, 1923. — May 24, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & PIERCE, JJ.

*Actionable Tort. Negligence,* Of subcontractor. *Damages,* In tort. *Contract. Estoppel.*

An owner of land is entitled to maintain an action of tort for injury to his property against one who, under a subcontract with a contractor who had agreed with the plaintiff to erect a foundation and retaining wall upon the land, performed the work so negligently and improperly that the wall fell.

A verdict for the plaintiff in such an action is warranted if there was evidence tending to show that the wall fell because it was improperly built, because the cement was of improper consistency and because, without first being shored up, it was back-filled in the winter season before the mortar had had an opportunity to harden.

In the action above described, the plaintiff was entitled to recover as damages the expense attending the restoration of the property to a condition it would have been in had the defendant performed his duty in reference to it.

In his charge to the jury in the action above described, the judge, subject
to an exception by the defendant, instructed them that, if the defendant's
"negligence caused the wall to fall, he is liable for the costs of restoring
that wall. If his negligence was the proximate cause of the toppling over
of the superstructure in connection, — if one was the cause of the other,
a causal relation between them, he is liable for the cost of the restoration
of the superstructure." *Held*, that the exception must be overruled.

At the trial of the action above described, it appeared that the contract between
the plaintiff and the main contractor required that the work was to be
performed under the supervision of the architect, that his decision as to
the quality of labor and materials, or the construction of the work was to
be final, and that the work should be finished in a good and workmanlike
manner. After the completion of the work on the wall, the architect issued
to the main contractor a certificate upon which the plaintiff paid all but a
small balance of the contract price which was not due until thirty days
after the contract work was completed. Within a few days the walls col-
lapsed. The defendant asked for and the judge refused to give the following
ruling: "While the architect could not waive a breach of the contract,
if there was a fair question whether said work and materials were in com-
pliance with the contract, the architect's decision in reference thereto in
this case would bind the owner by way of equitable estoppel." *Held*,
that the ruling properly was refused.

Tort for damages resulting from the falling of a founda-
tion and retaining wall alleged to have been built and back-
filled negligently by the defendant on land of the plaintiff
while acting under a subcontract with a firm of Babbitt and
Oliver, who had contracted with the plaintiff to build the
wall. Writ dated April 12, 1916.

In the Superior Court, the action was tried before *Quinn*, J.
Material evidence, requests by the defendant for rulings, and
instructions to the jury by the judge are described in the
opinion. There was a verdict for the plaintiff in the sum of
$3,345.41. The trial judge reported the action to this
court for determination.

*F. E. Shaw*, for the defendant.

*H. R. Mayo*, (*G. W. Howe* with him,) for the plaintiff.

Pierce, J. This action of tort, after a verdict for the
plaintiff in the sum of $3,345.41, is before this court upon
a report from the Superior Court upon the following terms,
to wit: "If the court erred in refusing to grant the de-
fendant's motion to order a verdict for it, or if the court
erred in refusing to give the defendant's requests for in-
structions, or any of them, or erred in its instructions to the

jury in such part of its charge, as the defendant duly excepted to, then such entry and disposition in this case is to be made by the Supreme Judicial Court as may be meet and proper under the law applicable thereto."

The facts succinctly stated in the report are that on December 20, 1915, the plaintiff was the owner of a certain parcel of land in Lynn, on which he desired to erect a brick garage; that the lot sloped from Mount Vernon Street to a height of sixteen feet at the rear of the lot, and that the material was gravel; the foundation walls for the building were to be of stone laid in cement, and were to be built to the level of the sidewalk on Mount Vernon Street, on the front end, and on the north side; on the rear the stone foundation walls were to rise to a height of twenty-two and one half feet; and on the southerly side they were to rise to a similar height, except for a stretch twelve feet long adjoining Mount Vernon Street which was to be built level with the street. The high walls on the rear and on the south side were intended to serve both as foundation walls for the structure and as retaining walls for the gravel bank.

The plaintiff let the contract for the construction of these stone walls to the firm of Babbitt and Oliver under a written contract, a copy of which is annexed to the report and made a part thereof. The work was to be done in accordance with plans and specifications prepared by Charles V. Burgess, architect, annexed to and made a part of the report. By the terms of the contract the work was to be performed under the supervision of the architect, and his decision as to the quality of labor and materials, or the construction of the work was to be final. The contract provided that the work should be finished in a good and workmanlike manner, and should be completed on or before the twentieth day of January, 1916. It further provided that the contractor should be paid $2,100: a first payment of $1,200 to be paid when excavations were completed, a second payment of $800 at completion of stone work and sewer drain, and a final payment of $100 within thirty days from the date of the completion of the contract. The specifications among

other provisions required the contractor to back up all walls with gravel and loose stone, tamping same down hard.

Babbitt and Oliver sublet the contract to the defendant, a contractor of many years' experience in this class of work. He built the walls during the months of January, February and March, 1916. No question is raised because of the non-completion of the work on January 20, 1916, the date named in the contract. The walls were all finished on or about the twentieth day of March, 1916. On the second day of April, 1916, substantially all the high stone wall on the south side fell into the cellar and on April 9, 1916, the rear wall fell into the basement.

After the walls were completed, and before they collapsed, on April 1, 1916, the architect issued to Babbitt and Oliver a certificate upon which the plaintiff paid them the balance of the contract price, excepting the $100 retained under the contract. Immediately following the collapse of the walls on April 2 and 9, the architect sent notice to Babbitt and Oliver that the walls must be rebuilt forthwith. This notice was turned over to the defendant. After futile negotiations the walls were subsequently rebuilt by another contractor upon the same plans and are still standing.

The plaintiff brings this action of tort against the defendant for the alleged damage caused by the collapse of the walls. The plaintiff in his declaration alleges that the defendant was guilty of negligence in constructing the walls; that the materials used were improper and did not comply with the requirements of the plans and specifications; that the work was done improperly and that it was improper and negligent to back-fill, and place the gravel against the wall without shoring or bracing the wall before the mortar had set.

Upon the testimony of the architect the jury were warranted in finding that the walls fell because of three reasons: (1) improper binding; (2) improper mixture of cement; and (3) throwing of back-fill behind the walls before the mortar had a chance to set. Upon the testimony of an admitted expert, Joseph R. Worcester, the jury were warranted in finding that the " design and plan " of the wall were proper and that the collapse of the walls " was caused

by the pressure of the back-filling against the unsupported wall, and that the walls should have been braced if it was desired to throw in the back-fill before the cement mortar had thoroughly set." Upon the testimony of another expert, Daniel Sargent, a brick mason of forty years' experience, the jury were warranted in finding that the walls fell because of " several causes; viz., because of being improperly built, because the cement was not proper, not of proper consistency, and the back-filling was the principal cause of the fall; the walls being weak would not stand as much as they would if properly built; if they had been shored up they would have stood a great deal more pressure."

At the close of the evidence the defendant filed a motion for a directed verdict and, upon the denial of the motion, requested the trial judge to rule and instruct the jury as follows: " 1. On all the evidence the plaintiff is not entitled to recover." " 3. There is no evidence to warrant the jury in returning a verdict for the plaintiff against this defendant in an action of tort."

These requests were refused.

It is plain the motion and the request for rulings were refused rightly. The evidence warranted a finding that the collapse of the walls was directly attributable to the neglect of the defendant to shore and brace the walls before casting upon them material which was likely, when expanded by frost action, to overthrow them if unbraced. The right of action is not for damages resulting from the non-action of the defendant in the performance of a contract with a person other than the plaintiff, but is for an injury to the property of the plaintiff which resulted from the neglect of the defendant properly to perform an act or acts which he had undertaken to perform upon the property of the plaintiff. " The gist of the action is the breach by the . . . [defendant] of the duty which . . . [he] owed to the plaintiff not to injure his property by any wrongful or negligent act of . . . [his]." *Bickford* v. *Richards,* 154 Mass. 163, 164. *Tuttle* v. *George H. Gilbert Manuf. Co.* 145 Mass. 169, 175.

The defendant further asked the judge to rule, in reference to damages, as follows:

" 5. If the jury are satisfied that the defendant was guilty of any tortious act in the erection of the wall, the plaintiff's damages are limited to injury caused to his property by the collapse of the wall.

" 6. If the jury are satisfied that the defendant was guilty of any tortious act in the erection of the wall, the plaintiff's damages are limited to injury caused to his property or property for which he was responsible.

" 7. On the evidence the plaintiff's damages in this case are limited to such part of the bill of $411 paid to Wright as represented property damage."

These requests were refused rightly.

It was the contention of the defendant at the trial, and the requested rulings are based upon such contention, that the fall of the walls was attributable to the alleged fact or facts that the plans and specifications were inadequate and improper in their requirements for the work intended; that they required the work to be performed during an unfit and dangerous season of the year for such work, and filling improperly to be placed behind the walls at an unseasonable time, whereby, from the location of the building, the effect of vibration of numerous trains passing and the effects of alternate freezing and thawing, combined with other elements, the result complained of must inevitably follow. " In other words, if the plaintiff required and contracted for certain defective and insufficient work for the purposes intended, and required it should be done in such weather and under such circumstances as to render it unsafe and defective, and he, acting as a reasonably prudent man, or his architect, ought to have known it, then the fault is his, and not the contractors, or at least the fault is partially his and he cannot complain for getting what he insisted on."

In this regard the judge instructed the jury as follows: " If this wall was built according to the plans and specifications and built in a good, substantial, workmanlike manner, in all particulars, and fell from its own inherent inability to stand, simply and solely because of its dimensions, its height, its diameter, its breadth, no blame could attach to anybody for that; but you have a right to consider the fact

that McDonough knew the character of the wall that was being erected, and you have a right to consider whether or not McDonough knew or ought to have known, as a prudent builder of walls of that kind, that the materials used in the wall were not of the required kind in the contract; and also whether or not he knew, or the men there standing in his stead and acting for him knew or ought to have known, that the mortar that was used might not have the tensile strength, as they call it, of proper mortar, or the wall itself, in its entirety, might not be so cohesive as it ought to be in its ingredients and its construction as it would be if all the terms were complied with, and whether, if it was erected without full compliance with the requirements of the contract and specifications, it was rendered less strong, and whether or not one should exercise more caution in the completion of the back-filling relative to the setting of the mortar in the construction of the wall."

The judge instructed the jury, without exception, in reference to liability for the injury and the damage as follows: " The bone of contention in this case seems to be the matter of the back-filling. Was proper caution used in the matter of the back-filling? Did that cause this wall to topple? Was there negligence in the matter of the back-filling in any particular? And the burden is with the plaintiff to show you that that was so. Was good faith exercised in this whole transaction by the defendant? Did he measure up to the standard of the ordinary, competent mechanic or contractor in the light of all the circumstances? If he fails in the performance of the duty I have indicated as resting on his shoulders; that is, if he failed to exercise the care, failed to give the attention, failed to use the foresight and the caution of the ordinary, prudent, competent builder and thereby and on account of such failure or want of caution or foresight, the wall toppled, or the walls toppled, he is liable for all the damages which resulted from his neglect, his negligent construction or his negligent failure to use other precautions, if you think other precautions should be used in regard to the back-filling and all the other circumstances surrounding the work."

At the close of the charge the judge further instructed the jury on the subject of damages as follows: " The damages in the case of McDonough are the damages that you find were proximately caused by any failure on his part to perform his duty, on the lines I have already instructed you in regard to his due care and attention and caution in the performance of the work. I mean to instruct you by that, if his negligence caused the wall to fall, he is liable for the costs of restoring that wall. If his negligence was the proximate cause of the toppling over of the superstructure in connection, — if one was the cause of the other, a causal relation between them, he is liable for the cost of the restoration of the superstructure."

The defendant excepted to this last portion of the charge relating to the plaintiff's damages and the liability therefor and the measure thereof, as set forth in the concluding paragraph.

The rule as formulated in the quoted charge is " if his negligence caused the wall to fall, he is liable for the costs of restoring that wall. If his negligence was the proximate cause of the toppling over of the superstructure in connection, — if one was the cause of the other, a causal relation between them, he is liable for the cost of the restoration of the superstructure." The fall of the walls could warrantably have been found by the jury to have resulted from and as the natural and probable consequence of the defendant's negligence. If they should so find, the defendant should be held liable for the expense attending the restoration of the property to a condition it would have been in had the defendant performed his duty in reference to it.

At the close of the evidence the judge refused, after allowing it to be presented, the following request: " While the architect could not waive a breach of the contract, if there was a fair question whether said work and materials were in compliance with the contract, the architect's decision in reference thereto in this case would bind the owner by way of equitable estoppel." We think the ruling denying the request was clearly right. The decision of the architect was made after the defendant had completed his work and

in no way had any influence upon the defendant in the performance of his undertaking. *Baker* v. *Seavey*, 163 Mass. 522, and cases cited at page 527.

,The defendant's brief is largely devoted to alleged prejudicial errors in the judge's charge. In none of the respects challenged in the brief was an exception taken in this trial.

Perceiving no error in any matter saved to the defendant by the report, the entry must be judgment on the verdict.

*So ordered.*