BENJ. N. MOORE & SONS COMPANY *vs.* MANUFACTURERS NATIONAL BANK.

FREDERICK N. MOORE *vs.* CLIFTON COLBURN.

Essex.   October 21, 1927.— November 22, 1927.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Negligence,* In care of pledged property.   *Pledge.   Conversion.*

A bank, which received certain leather as collateral security for the payment of a note and made an agreement which gave it the privilege of selling the collateral to satisfy the amount due upon the note but did not require it to do so, nevertheless was bound to exercise reasonable care that no unnecessary injury should come to the leather while it was in its keeping, and particularly while, in the exercise of its right, it was exhibiting the leather to prospective customers.

Where, at the trial of an action by the maker of the note above described against the bank for deterioration in the value of the leather by reason of negligence of the defendant in failing to care for it while it was being shown to possible purchasers, there was evidence that the defendant permitted handling and trampling upon the leather to such a degree that its value was diminished, it was improper to order a verdict for the defendant.

Two actions of tort, one against an individual for slander and the other against a bank for negligence in the care of collateral pledged to it, were tried together and verdicts were ordered for both defendants. The plaintiff filed a single bill of exceptions for both actions. After the trial, the defendant in the action for slander died and the plaintiff in this court conceded that that action abated. This court, having sustained exceptions by the plaintiff in the action against the bank, *ordered* that in the action against the individual the exceptions of the plaintiff be overruled, *nunc pro tunc,* as of the day after their allowance.

TORT with a declaration described in the opinion. Writ dated June 14, 1923. Also,

TORT for slander. Writ dated June 15, 1923.

In the Superior Court, the actions were tried together before *Quinn,* J. The note of the plaintiff corporation to the bank stated that the plaintiff had deposited and pledged "Mixed Collateral" with the bank as collateral security and contained, among other provisions, the following: "Upon default in any payment of principal or interest at the time or on the terms herein provided or upon the non-performance by the undersigned of any of the agreements or conditions herein contained, or in case of any depreciation in the value of said collateral below the value agreed upon, this note shall, at the absolute option of said Bank, become immediately due and payable, and in such event said Bank is hereby authorized immediately to sell the whole or any part of the aforesaid collateral or any substitutes therefor or additions thereto at any broker's board or at public or private sale, at the option of the Bank, without notice of the amount due or claimed to be due, without demand of payment, without advertisement and without notice of sale, each and all of which is hereby expressly waived; and to apply the net proceeds of such sale after deduction of expense for collection, sale or delivery to the payment of this note and of any other liability or liabilities whether due or not due, of the undersigned to said Bank, returning the overplus if any, to the undersigned, who shall remain liable for any deficiency arising upon any such sale with legal interest."

Other material evidence is stated in the opinion. The judge ordered verdicts for the defendants and the plaintiffs alleged exceptions in both cases and filed a single bill of exceptions.

In their brief, the plaintiffs' counsel stated that the question of the propriety of the ordering of the verdict "does not now arise in the second action because since the trial in the Superior Court, the defendant has become deceased and the plaintiff concedes that there being neither allegation nor proof of special damages, that the said action does not survive."

*J. J. Ronan,* (*R. E. Blake* with him,) for the plaintiffs.

*W. Hirsh,* for the defendant corporation.

PIERCE, J. These two actions sounding in tort were tried together in the Superior Court. Since the trial the defendant in the second action has died, and the plaintiff concedes that this action abates, there being neither allegation nor proof of special damages.

Counts one and two of the declaration in the first action in substance allege that the defendant wilfully and in bad faith, and without good faith and the exercise of reasonable diligence, neglected and omitted to sell and dispose of certain leather, which the plaintiff had pledged with the defendant as collateral security for a loan of $50,000, although, after the defendant had demanded the payment of the loan, the plaintiff had repeatedly brought to its attention that the leather could be sold at such a price as to compensate the defendant for the loan and leave a substantial balance to the plaintiff; that the defendant in violation of its duty to the plaintiff, ultimately sold the leather at a grossly inadequate price, whereby the plaintiff suffered the damages as alleged in the writ. Count three alleges in substance that the defendant negligently failed to preserve or protect the leather, allowed it to deteriorate, and thereby prevented a sale of it at such a price as would liquidate the loan and allow a substantial surplus for the plaintiff. Count four alleges "that the defendant converted to its own use a certain large quantity of leather, of great value, the property of the plaintiff." All the material evidence is contained in the bill of exceptions. At the close of the evidence the judge directed a verdict for the defendant in each case, and the only question now open in this court is whether the judge erred in directing a verdict in the first action.

The plaintiff does not argue orally or in its brief in support of the allegations in its declaration that the defendant neglected to sell the leather pledged as collateral for the notes of the plaintiff, after the defendant had demanded payment of the notes. Indeed the evidence in its aspect most favorable to that contention does not warrant a finding that the plaintiff wished, much less requested, that a sale be had.

The brief of the plaintiff is addressed to the support of the allegations contained in the third count of its declaration, wherein it is alleged that the "defendants in violation of this duty negligently and in bad faith took no steps to preserve or protect said leather, but allowed said leather to be so handled so as to markedly deteriorate . . . to the great damage to the plaintiff." The evidence in support of this allegation, and pertinent to that issue, is as follows: The defendant lent the plaintiff $50,000 on two notes in November, 1919. The plaintiff pledged, as collateral security for the loan, leather, a part in November, 1919, and another part in 1920. This leather was deposited in the name of the defendant in the Federal Storage Warehouse Company and in the Merchants Warehouse for about nine months, and during this time the plaintiff did not have access to it. In the fall of 1921, it was taken from the public warehouse and put into a loft on the premises of the Carr Leather Company to save expense. The defendant, on February 25, 1921, wrote the plaintiff a letter, wherein it is stated: "We are now calling this loan and you may consider this letter demand for payment. If this demand is not complied with by March 1st, we shall begin to sell the collateral on the market at the most favorable price we can obtain."

The reported evidence, in many respects conflicting, warranted the jury in finding that the leather was shown by the defendants at the loft to a lot of people, who made an examination of it by taking the bundles down, opening them on the table, looking them over, pushing them aside, taking down some more, trying to see as much leather as they could while they were there; that the leather would get loosened up, slide off the table, get onto the floor; that after they got through, a witness, Carr, would go to work and pile it up and get it back into bundles as fast as he could, until it got so that he could not keep it piled up as fast as they opened it; that Carr would telephone Moore, who would send people there to fix it up; that some one from Moore's came over five or six times to sort or pack it up; that as people examined the leather the pile on the floor would be perhaps two or three feet deep; that on occasions eight or ten people

examined the leather at the same time, and, to do so, walked over the leather, " because there was no floor space to walk on, after the bundles were strewn around." The evidence warranted a further finding that walking on the leather while exhibiting it to customers would cause it to deteriorate, make it useless, practically absolutely useless, so that it could not be used for any purpose, only as junk. It could be further found that the leather was at the Carr warehouse for several months, and that it was then taken to Lynn in trucks and put in a building of the Lynn Realty Company.

While the defendant was under no legal obligation to sell the collateral to satisfy the amount due upon the notes, it was bound to exercise reasonable care that no unnecessary injury should come to the leather while it was in its keeping, and particularly while, in the exercise of its right, it was exhibiting the leather to prospective customers. *Guild* v. *Butler,* 127 Mass. 386. *Guinzburg* v. *H. W. Downs Co.* 165 Mass. 467. *Hecht* v. *Boston Wharf Co.* 220 Mass. 397, 403. Whether the defendant in the care of the collateral exercised the care of a reasonable, prudent person in the circumstances was a question for the jury on all the evidence.

The evidence would not sustain the count for conversion, for the reason that the plaintiff had not a present right of possession, nor a right to recover the fair market value of the collateral, less the amount due for the debt for which the goods were pledged; which right is based on the assumption that the defendant had wrongfully put it out of its power to return the property on tender of the amount justly due. *Whitman* v. *Boston Terminal Refrigerating Co.* 233 Mass. 386, 391.

It results that a general verdict should not have been directed for the defendant and that the exceptions of the plaintiff in the first case must be sustained; and in the second case that the exceptions of the plaintiff be overruled, *nunc pro tunc,* as of the day after their allowance.

*So ordered.*